RECEIVED

SEP 1 6 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE-OPELOUSAS DIVISION**

COURTNEY SOIREZ

versus

VERMILION PARISH SCHOOL
BOARD and CHARLOTTE
WAGUESPACK, Principal of Erath
High School

Civil Action No. 6:04-CV-00959

Judge Tucker L. Melançon

Magistrate Judge Mildred E. Methvin

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Rec. Doc. 9] filed by

defendants Charlotte Waguespack and the Vermilion Parish School Board and

plaintiff Courtney Soirez's opposition thereto [Rec. Doc. 11]. For the following

reasons, defendants' motion will be granted.

### I. Background

This case arises from defendant Charlotte Waguespack's decision to exclude

plaintiff Courtney Soirez from graduation ceremonies on May 31, 2003.

Waguespack, the principal of Erath High School, prohibited Soirez from walking in

1

her high school graduation ceremony because Soirez failed to attend one of the two mandatory practice sessions. The mandatory attendance policy was announced, printed and distributed to all of the graduating seniors, including Soirez. (*Soirez dep.*, pp. 54-56; *Waguespack dep.*, pp.12-13).

Defendants do not dispute Soirez's claims that she missed the second practice session because of the effects of pain medicine she took the night before to treat discomfort associated with her spinal condition known as spondylolisthesis. (*Plaintiff's Statement of Uncontroverted Material Facts*, No. 12). Specifically, Soirez contends that pain medicine she ingested around 3:00 a.m. the morning of the second rehearsal caused her to sleep through her alarm. Upon learning of Soirez's absence, the school staff made several attempts to contact Soirez by calling her father and her phone number of record. (*Soirez dep.*, p. 58; *Waguespack dep.*, pp. 26-28). Each attempt was futile. (*Soirez dep.*, p. 58; *Waguespack dep.*, pp. 26-28). After the conclusion of the second practice, Soirez's father sent in a doctor's excuse from Dr. Andrew King, Soirez's treating surgeon. *(Plaintiff's Exhibit 2, Medical Excuse*; *Soirez dep.*, pp. 59-60). Also, Soirez contacted Principal Waguespack and requested

that an exception be made to the graduation practice attendance policy. (*Soirez dep.*, pp. 100-101; *Waguespack dep.*, pp. 34-35). Waguespack declined the request, but informed Soirez that she would still receive her high school diploma. (*Soirez dep.*, pp. 100-101). Waguespack contends that in refusing Soirez, she was simply enforcing the mandatory attendance policy, which Soirez was clearly aware. (*Waguespack dep.*, pp. 28-29). Vermilion Parish School Board members and the superintendent deferred the matter to Principal Waguespack, explaining that the decision was within her discretion. (*Soirez dep.*, pp. 58-59; *Waguespack dep.*, p. 24). Soirez did not participate in any official graduation activities, but she did receive her diploma within a week of the graduation date. (*Soirez dep.*, pp. 66-67).

Soirez alleges that she was denied the right to participate in graduation on account of her physical disability. Soirez avers that she was excluded from participation because of her "disabled" status, as defined by the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") and by the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) ("Rehabilitation Act"). Thus, as a disabled person, Soirez argues that she should be afforded the protections against unjust

discrimination and be granted the necessary accommodations guaranteed by the ADA and the Rehabilitation Act.

Defendants move for summary judgment, requesting the Court find that Soirez was not wrongfully excluded and denied the benefits of public services based on her disability.

## II. Standard for Summary Judgment

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Celotex Corp.*, 477 U.S. at 324.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Little*, 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. Analysis

In her complaint, Soirez alleges that defendants acted in violation of Title II of the ADA and the Rehabilitation Act. Specifically, plaintiff relies on 42 U.S.C. § 12132 of the ADA, which reads as follows:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by such entity.

5

The applicable section of the Rehabilitation Act, 29 U.S.C. § 794, reads as follows:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

Because of the similarity of the provisions of the two acts, courts have held that jurisprudence interpreting either act is interchangeable and applicable to both. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000). Accordingly, case law that addresses the ADA may be applied to cases involving the Rehabilitation Act, and *vice versa*. *Pace v. Bogalusa City School Board*, 325 F.3d 609, 616 (5th Cir. 2003). Because of the interplay between the two acts, all claims in this action will be considered collaboratively.

To recover under the ADA or the Rehabilitation Act, a plaintiff generally must prove that she (1) was an individual with a "disability"; (2) was "otherwise qualified"; (3) was involved with a "program or activity" that received Federal financial assistance; and (4) was adversely treated solely because of her disability. *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 365 (5th Cir. 1995).

*1. Whether Plaintiff was an Individual with a "Disability"*

The first prong requires a showing that the individual suffers with a "disability." The ADA defines "disability," with respect to an individual, as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). The Federal Regulations further extrapolate standards for determining whether an individual's infirmity qualifies as one that "substantially limits one or more major life activity." *Id.* Under the Regulations, an individual's impairment is one that is substantially limiting if it renders the person "unable to perform a major life activity that the average person in the general population can perform; or significantly restrict[s] as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). The Regulations further provide that, "major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and walking." 29 C.F.R. § 1630.2(i). Major life activities are those that are "of central importance to most people's daily lives." *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002). These terms should be "interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* at 197.

To survive summary judgment, Soirez must establish that her spinal condition was so severe as to substantially limit her ability to perform major life activities. The record does not support such a finding. "To determine whether a person is substantially limited in a major life activity other than working, we look to whether that person can perform the normal activities of daily living." *Pryor v. Trane Co.*, 138 F.3d 1024, 1027 (5th Cir. 1998) (quoting *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996)). At the time leading up to, during, and after the missed graduation practice, Soirez was able to participate in many activities that a healthy teenager would be involved. She regularly attended class during her senior year, volunteered as the statistician for the basketball team, held a job which required long hours on her feet, and attended private graduation parties. Soirez's treating physician documented that Soirez had "returned to normal activities of daily living" shortly after her second corrective surgery. (*Plaintiff's Exhibit 1, Certified Medical Records of Dr. Andrew King, letter dated September 10, 2002*).

The Regulations further provide factors to consider in determining whether an individual's impairment substantially limits her in a major life activity: (1) the nature and the severity of the impairment; (2) the duration or expected duration of the impairment; (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). As

8

indicated in her deposition testimony, Soirez did not feel discomfort frequently enough to qualify her impairment as "substantially limiting." (*Soirez dep.*, pp. 68-70). Soirez acknowledged that the pain associated with her condition sporadically flared up approximately once every couple of weeks. (*Id.*). At most, she felt discomfort once a week. (*Id.*). Plaintiff's claims cannot stand based on the record before the Court.

Based on the Court's aforesaid determination, defendants' remaining claims need not be addressed.

## IV. *Conclusion*

For the forgoing reasons, the Court will grant the Vermilion Parish School Board and Charlotte Waguespack's Motion for Summary Judgment and Courtney Soirez's claims will be dismissed with prejudice.

COPY SENT:
DATE: 9-16-05
BY:
TO:
PJ

9